08 CV 02502

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FLEX-N-GATE CORPORATION, an :
Illinois corporation, :
: Case No. 08-CV-____
                 Plaintiff, :
vs. :
:
GERHARD WEGEN, a citizen of :
Germany, :
:
                 Defendant. :
-----------------------------------------------------------X



## COMPLAINT AND DEMAND FOR JURY TRIAL

      In this civil action, Plaintiff, Flex-N-Gate Corporation asserts claims against Defendant Gerhard Wegen arising out of Wegen's misconduct as the chairman of an arbitral tribunal presiding over DIS arbitral proceedings in Germany. Flex-N-Gate claims that Wegen, a German lawyer, and chairperson of the arbitral tribunal, breached and violated promises and covenants of confidentiality concerning the arbitral proceedings, intentionally interfered with Flex-N-Gate's contractual relations or prospective contractual relations with third parties, and breached the confidentiality provisions of the contract formed by his agreement to abide by the rules governing the DIS arbitral proceedings. Flex-N-Gate seeks just compensation from Wegen in the form of money damages for the injuries his improper conduct has caused Flex-N-Gate to suffer.

### PARTIES, JURISDICTION AND VENUE

      1.     Plaintiff is Flex-N-Gate Corporation ("Flex-N-Gate"). Flex-N-Gate is a corporation organized and existing under the laws of the State of Illinois. Its principal place of business is in Urbana, Illinois.

2. Defendant is Gerhard Wegen ("Wegen"). Wegen is an individual who, on information and belief, is a citizen of Germany and is not a citizen of the United States of America. On information and belief, Wegen's residence is in Germany. He is also a partner in a German law firm, Gleiss Lutz, with offices in, among other places, Stuttgart, Germany. On information and belief, Wegen is also licensed to practice law in the State of New York and is admitted to the bar in the State of New York.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy herein exceeds the sum or value of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and is between a citizen of the State of Illinois and a citizen of a foreign state, Germany.

4. This Court has personal jurisdiction over Defendant because Defendant's conduct giving rise to Flex-N-Gate's claims occurred in the City of New York and the State of New York in December 2007. Defendant has sufficient contacts and presence in the State of New York such that the exercise of personal jurisdiction over him will not offend traditional notions of fair play and substantial justice.

5. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to Flex-N-Gate's claims occurred in the Southern District of New York. Further, Defendant Wegen is an alien and as provided by 28 U.S.C. §1391(d), an alien may be sued in any district.

**OTHER ENTITIES AND INDIVIDUALS**

6. Timothy F. Graham ("Graham") is a barrister, solicitor and notary public and is Vice President, Secretary and General Counsel of Flex-N-Gate. He is a citizen of Canada.

7. Gleiss Lutz is a German law firm in which Defendant Wegen is, on information and belief, a partner or principal.

## HISTORY AND UNDISPUTED FACTS

8. On or about May 2, 2004, Flex-N-Gate entered into a Sale and Purchase Agreement ("SPA") as buyer of the assets or shares of a German tier one automotive supplier who, due to confidentiality provisions in the SPA, is hereby designated as "Seller."

9. Pursuant to the SPA, Flex-N-Gate was to acquire Seller.

10. The SPA provides that disputes between the parties would be referred to arbitration.

11. A dispute arose between Flex-N-Gate and Seller over the obligations under the SPA.

12. Seller commenced a claim against Flex-N-Gate to be resolved in arbitration, which arbitration was commenced in approximately December 2004. The place of the arbitration was designated as Frankfurt am Main, Germany. The language of the arbitration was to be English. The arbitral tribunal was to consist of three arbitrators.

13. Flex-N-Gate nominated an arbitrator and Seller nominated an arbitrator. Between the two nominated arbitrators, they selected Wegen as the chairman of the arbitral tribunal. The confirmation of Wegen as chairman of the arbitral tribunal was confirmed on February 3, 2005. The other arbitrators are Dr. Siegfried H. Elsing and Dr. Thomas Hauss.

14. The arbitration was governed by the rules of the German Institute of Arbitration e.V. (DIS). The German Arbitration Institute requires that arbitrations under its jurisdiction comply with its rules.

15. The DIS Arbitration Rules enforced in the arbitration between Flex-N-Gate and Seller require strict confidentiality. An accurate and genuine statement of §43 of the DIS Arbitration Rules is:

       a.     Rule 43.1: The parties, the arbitrators and the persons at the DIS Secretariat involved in the administration of the arbitral proceedings shall maintain confidentiality towards all persons regarding the conduct of arbitral proceedings, and in particular regarding the parties involved, the witnesses, the experts and other evidentiary materials. Persons acting on behalf of any person involved in the arbitral proceedings shall be obligated to maintain confidentiality.

       b.     Rule 43.2: The DIS may publish information on arbitral proceedings in compilations of statistical data, provided such information excludes identification of the persons involved.

16. When Wegen agreed to become chairman of the arbitral tribunal, he agreed to abide by and obey the DIS Arbitration Rules. That agreement was a contract between Wegen, Flex-N-Gate and Seller, or alternatively, was a promise by Wegen on which Flex-N-Gate could justifiably rely.

17. Between February 2005 and November 2007, there were numerous meetings, hearings, evidentiary hearings and proceedings in the arbitration.

18. In approximately October or November 2007, Flex-N-Gate and Seller began to consider whether or not the dispute between them in the arbitral proceedings could be resolved without completing the arbitral proceedings through the use of an alternative dispute resolution mechanism commonly known as mediation.

19. Wegen, and the other arbitrators, became aware of the parties' consideration of mediation.

20. Flex-N-Gate believed at that time that it and Seller would consider the names and backgrounds of potential mediators to determine if they could agree on one or more mediators to conduct mediation sessions between them.

21. Unbeknownst to Flex-N-Gate, in December 2007, Wegen unilaterally and without the knowledge or consent of Flex-N-Gate approached a third party, an individual who is a German citizen and either affiliated with or formerly affiliated with Daimler AG and affiliated with Rothschild, an investment bank, to act as a mediator.

22. Prior to contacting the third party ("Dr. M"), neither Wegen nor the other arbitrators sought permission to disclose the identity of the parties or the nature of the dispute in the arbitration to potential mediators.

23. On or about December 12, 2007, while he was in New York City, Wegen telephoned Dr. M and disclosed to Dr. M, his potential mediator, the identity of Flex-N-Gate as Seller as parties to the arbitral proceedings. On information and belief, Dr. M was in New York when he received Wegen's call.

24. On information and belief, on or about December 16, 2007, Dr. M communicated with Wegen in New York that Dr. M felt he had no "conflicts of interest" in acting as a mediator in the arbitral proceedings between Flex-N-Gate and Seller.

25. On December 17, 2007, Wegen sent a letter on the letterhead of his law firm, which letter was addressed to counsel for Flex-N-Gate and Seller in the arbitral proceedings and to Graham, as General Counsel for Flex-N-Gate in Lakeshore, Ontario, Canada. Therein, Wegen for the first time notified Flex-N-Gate that he had spoken about the arbitral proceedings to a third party and identified Dr. M as a potential mediator. Dr. M was described in that letter as "executive advisor to the Chairman" of Daimler AG.

26. Well known to Wegen at the time he contacted Dr. M was the fact that Daimler AG was and is a major customer of Flex-N-Gate and its affiliates; that Dr. M was an advisor to the Chairman of Daimler AG; that Dr. M was Chairman of the supervisory board of

the investment bank, Rothschild; that a Flex-N-Gate affiliate was actively engaged in a potential sale transaction wherein a Flex-N-Gate affiliate would acquire the assets or shares of a German tier one automotive supplier; and that Daimler AG's consent to Flex-N-Gate's affiliate's involvement in the transaction was key to the Flex-N-Gate affiliate's chances of entering into a prospectively advantageous economic arrangement. Wegen also either knew or should have known that his law firm, Gleiss Lutz, represented the German tier one automotive supplier for whose assets a Flex-N-Gate affiliate was bidding. Rothschild, on information and belief, represents or advises a bidder which was competing against Flex-N-Gate's affiliate for the acquisition of the assets of the German tier one automotive supplier.

27.     On December 21, 2007, Flex-N-Gate objected to Dr. M being appointed as mediator.

28.     On December 28, 2007, Wegen again wrote to counsel for the parties in the arbitral proceedings and Graham on the letterhead of his law firm, Gleiss Lutz, and declared, "The designation of a mediator as per my letter of December 17, 2007, to have become moot, as the specific person so designated was not accepted in principle."

29.     On December 31, 2007, in the arbitral proceedings between Flex-N-Gate and Seller, Flex-N-Gate filed "Respondent's Challenge Under §18 DIS Rules" (the "Challenge"), in which Flex-N-Gate challenged Wegen as chairman of the arbitral tribunal for "justifiable doubts as to his impartiality and independence."

30.     On or about January 9, 2008, Wegen, on the letterhead of his law firm, Gleiss Lutz, responded to the Challenge while admitting his contact with Dr. M on December 12, and December 16, 2007.

31. Wegen's conduct in unilaterally and without the consent of Flex-N-Gate, contacting and discussing the arbitral proceedings with Dr. M constituted Wegen's tortious interference with Flex-N-Gate's prospective economic advantage.

32. Wegen's tortious conduct or his breach of contract or his breach of his promise of confidentiality has caused Flex-N-Gate and its affiliates tremendous and irreparable damage. Flex-N-Gate believes that its damages may exceed One Million Dollars.

## COUNT I
## BREACH OF CONTRACT

33. Flex-N-Gate incorporates by reference all prior allegations in this Complaint into this Count as though repeated verbatim.

34. A valid contract exists between Flex-N-Gate, Seller and Defendant Wegen.

35. One of the terms of the contract is that Wegen, Flex-N-Gate and Seller shall abide by the DIS Arbitration Rules including, without limitation, its rules regarding confidentiality of information.

36. Wegen breached the contract by his unauthorized disclosure of information about the parties in the arbitration to Dr. M.

37. Wegen knew that Dr. M was an advisor to Daimler AG and a member of the board of Rothschild, an investment bank. Wegen further knew that Daimler AG was a major, if not the major, customer of Flex-N-Gate and certain of its affiliates. Wegen knew that Dr. M was an advisor to Dieter Zetsche, Chairperson of Daimler AG. Wegen knew, or is deemed to have known, or such knowledge is imputed to him, that his law firm, Gleiss Lutz, was representing the Seller of a German tier one automotive supplier and that Flex-N-Gate was a bidder in that process. Wegen knew or should have known that disclosure of the arbitration, and

Flex-N-Gate's involvement in the arbitration with Seller, to Dr. M would negatively affect the prospects of Flex-N-Gate or its affiliate in becoming the winning bidder for the German tier one automotive supplier.

38. The bid procedure in which Flex-N-Gate was engaged, until Wegen's unauthorized and wrongful disclosure of the arbitration to Dr. M, has been put on hold and it is anticipated that Flex-N-Gate will not be permitted to bid for the German tier one automotive supplier because it cannot obtain the consent of Daimler AG to such a bid because Daimler AG now knows some of the details, from Dr. M, of the arbitral proceedings.

39. Wegen's unauthorized disclosure of confidential information concerning the arbitral proceedings constitutes a breach of contract.

40. Wegen's breach of contract has caused Flex-N-Gate to suffer damages.

41. Flex-N-Gate states that at this point, it has not calculated the total impact of Wegen's breach of contract, but Flex-N-Gate believes that its damages may exceed One Million Dollars.

## COUNT II
## PROMISSORY ESTOPPEL

42. Flex-N-Gate incorporates by reference all prior allegations in this Complaint into this Count as though repeated verbatim.

43. Wegen's acceptance of the position of chairman of the arbitral proceedings constituted Wegen's promise to abide by the DIS Arbitration Rules.

44. Wegen's agreement to abide by the DIS Arbitration Rules was a promise on which Flex-N-Gate could reasonably rely.

45. Wegen's agreement to abide by the DIS Arbitration Rules included a promise by Wegen to maintain confidentiality of all information concerning the arbitration.

This, too, was a promise by Wegen on which Flex-N-Gate could reasonably rely at the time it was made.

46.   Flex-N-Gate relied on Wegen's promises. Such reliance was reasonable.

47.   Wegen failed to abide by his promise and breached it by disclosing confidential information concerning the arbitration to at least one third party, Dr. M, who is believed to have disclosed that information to others.

48.   By reason of Wegen's breach of his promise on which Flex-N-Gate reasonably relied, Flex-N-Gate has been injured.

49.   The damages to compensate Flex-N-Gate for the injury caused by Wegen have not been calculated at this point but, Flex-N-Gate believes that its damages may exceed One Million Dollars.

## COUNT III
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

50.   Flex-N-Gate incorporates by reference all prior allegations in this Complaint into this Count as though repeated verbatim.

51.   Wegen knew that Flex-N-Gate was involved as a bidder for the German tier one automotive supplier. Wegen knew, or is deemed to have known, or such knowledge is imputed to him, that his law firm, Gleiss Lutz, was representing the Seller of the German tier one automotive supplier.

52.   Wegen knew that Dr. M was an advisor to the chairperson of Daimler AG.

53.   Daimler AG's consent was critical to Flex-N-Gate's affiliate's bid for the German tier one automotive supplier and Flex-N-Gate would not be allowed to bid without Daimler AG's consent. On information and belief, Wegen knew these facts.

54.   Wegen's unauthorized disclosure of confidential information about the arbitration to Dr. M constitutes tortious interference with Flex-N-Gate's prospective business relationship and proposed contract to purchase the German tier one automotive supplier.

55.   Wegen's tortious interference caused injury to Flex-N-Gate.

56.   The amount of damages Flex-N-Gate has suffered by reason of Wegen's tortious conduct has not yet been precisely calculated. Flex-N-Gate believes that its damages may exceed One Million Dollars.

WHEREFORE, Flex-N-Gate respectfully requests a money judgment against Wegen in such amount as the trier of fact may determine after a trial on the merits but in no event less than Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and for such other and further relief as is appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Flex-N-Gate Corporation hereby demands trial by jury of all issues so triable in the above-captioned action.

Dated: New York, New York
       March 12, 2008

PEPPER HAMILTON LLP

By:_____
Kenneth J. King (KK 3567)
Samuel J. Abate, Jr. (SA 0915)
Attorneys for Flex-N-Gate Corporation
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
212.808.2700